IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES MARITIME ADMINISTRATION, PETE BUTTIGIEG, in his official capacity, and ANN C. PHILLIPS, in her official capacity,<br><br>Defendants. | Civil Action No.: 4:21-cv-132-EWH-LRL |

**DEFENDANTS' OPENING BRIEF REGARDING REMEDY**

In accordance with the Court's May 2, 2023, minute order, Defendants submit this brief demonstrating that the Maritime Administration ("MARAD") can comply with both the Endangered Species Act ("ESA") and the Court's Memorandum Opinion and Order by requesting initiation of informal consultation with the National Marine Fisheries Service ("NMFS") regarding the effects of MARAD's fiscal year 2018 James River Project grant ("FY 2018 grant") on Atlantic sturgeon and its critical habitat.

I.   **Procedural Background**

On March 31, 2023, the Court issued an order granting in part and denying in part both Defendants' and Plaintiff's motions for summary judgment. ECF 53. Defendants prevailed on the majority of claims and arguments. *See generally* Mem. Op., ECF 52. However, Plaintiff did prevail on a single claim: that MARAD violated Section 7 of the ESA when the agency failed to consult with NMFS on its issuance of the FY 2018 grant for the James River Project. *Id.* at 24-27; *see also* Complaint, ECF 1 ¶ 76-77, 82.

1

The Court stated it would "order MARAD to engage in Section 7 consultation on the FY 2018 James River Project grant to determine whether it is 'likely to jeopardize the continued existence' of Atlantic sturgeon populations in the James River." *See* Mem. Op., ECF 52 at 27 (quoting 16 U.S.C. § 1536(a)(2)). But the Court first directed the parties to confer and submit to the Court a proposed schedule for the consultation. *Id.* at 28. After meeting and conferring via video conference, telephone, and email, the parties submitted a joint proposed schedule for MARAD to request ESA consultation. *See* Notice, ECF 54. The schedule stated that MARAD will request initiation of informal consultation with NMFS pursuant to 50 C.F.R. § 402.13 by August 14, 2023. *Id.* at 1-2.

At a subsequent status conference on May 2, 2023, Plaintiff's counsel stated that he did not agree with the joint proposed schedule submitted to the Court.[1] Plaintiff's counsel argued at various points during the status conference that MARAD's decision to engage in informal consultation does not comply with the ESA or the Court's Memorandum Opinion.

## II. Argument

### A. The ESA and its Implementing Regulations Permit Informal Consultation

The ESA and its implementing regulations clearly show that MARAD may comply with Section 7 by engaging in informal consultation. As the Court correctly explained in its Memorandum Opinion, Section 7 requires an action agency, in consultation with the consulting agency (NMFS, the U.S. Fish and Wildlife Service, or both depending on the species involved), to ensure that its actions are "not likely to jeopardize the continued existence of any endangered

---

[1] If Plaintiff disagreed with the proposed schedule, it should not have consented to the joint filing. Instead, Plaintiff should either have submitted a separate proposed schedule for the Court's consideration or the parties could have filed a joint submission that included each parties' position. Defendants take issue with Plaintiff waiting until the status conference to inform the Court that it objected to the joint proposed schedule.

species or threatened species or result in the destruction or adverse modification" of designated critical habitat. 16 U.S.C. § 1536(a)(2); Mem. Op., ECF 52 at 5. The ESA's implementing regulations provide three ways that an action agency may comply with that provision.

First, the action agency can determine that its proposed action has "no effect" on ESA-listed species or critical habitat. If the proposed action has "no effect", it will necessarily not jeopardize the species, or its critical habitat and no Section 7 consultation is required. *See Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1447-48 (9th Cir. 1996); *Nat'l Res. Def. Council v. U.S. Envt'l Prot. Agency*, Civil No. 1:03-cv-02444, 2005 U.S. Dist. LEXIS 45449, at *14-15 (D. Md. May 24, 2005).

Second, if the agency determines that its action "may affect but is not likely to adversely affect" listed species or critical habitat, it may engage in informal consultation. 50 C.F.R. § 402.13(c); *id.* § 402.14(b)(1). During informal consultation, the action agency submits a written request for the consulting agency to concur with its "may affect but is not likely to adversely affect" determination. 50 C.F.R. § 402.13(c). It is then up to the consulting agency to decide whether it concurs with that determination. *Id.* If the consulting agency concurs, the action is not likely to jeopardize listed species or critical habitat, formal consultation is not required, and the action agency has complied with the ESA. *See id.*; *id.* § 402.14(b)(1). However, if the consulting agency does not concur with the action agency's "may affect but is not likely to adversely affect" determination, then the action agency is required to initiate formal consultation. *Id.* § 402.14(a).

The final option for complying with Section 7 is formal consultation. In formal consultation, the action agency, or the consulting agency during informal consultation, has determined that the action "may affect and is likely to adversely affect" listed species or critical habitat. *Id.* § 402.14(a)-(b)(1). The action agency will usually submit a biological assessment to

3

the consulting agency who then determines whether the action is likely to jeopardize listed species or critical habitat. *Id.* § 402.14(c)(3), (h)(1)(iv).

Here, the Court has determined that the FY 2018 grant "may affect" Atlantic sturgeon. Mem. Op., ECF 52 at 26-27 ("[T]he addition of a third barge on the river, one meant explicitly to increase traffic on the James, 'may affect' the sturgeon living there."). Therefore, absent a different ruling from this Court, the Fourth Circuit Court of Appeals, or a stay pending appeal,[2] the only two options available for MARAD to comply with Section 7 are informal or formal consultation. MARAD has opted for informal consultation because, it has not yet made a determination about the extent of the effect of the FY 2018 grant on Atlantic sturgeon and its habitat, and in absence of a determination that the agency action is "likely to adversely affect" listed species or critical habitat, formal consultation is not required. *See* 50 C.F.R. § 402.14(b)(1). Here, MARAD has not concluded its analysis, but it has received technical assistance from NMFS about ESA Section 7 consultation and Atlantic sturgeon, and MARAD interprets that technical data as suggestive of a determination that the FY 2018 grant may affect but is not likely to adversely affect the species or its habitat. Therefore, MARAD intends to request initiation of informal consultation.[3] In sum, Plaintiff's argument that MARAD cannot comply with the ESA by engaging in informal consultation—a process established in the ESA's implementing regulations—is unfounded.

---

[2] Defendants are considering each of these options and do not waive their rights regarding further relief from this Court or the Fourth Circuit Court of Appeals.

[3] Another benefit to engaging in informal consultation is that it saves significant agency resources compared to formal consultation. Informal consultation means MARAD will not need to produce a full biological assessment at this time. Rather, MARAD can provide NMFS with information similar to that required in a biological assessment, "but only at a level of detail sufficient for the Services to determine whether or not it concurs." Services' Regulations for Interagency Cooperation, 84 Fed. Reg. 44,979 (Aug. 27, 2019).

Moreover, there is no reason for Plaintiff or the Court to be concerned about MARAD's decision to engage in informal consultation. MARAD's determination that the FY 2018 grant is not likely to adversely affect Atlantic sturgeon, or its critical habitat is preliminary. If MARAD determines during the informal consultation process that the FY 2018 grant is, in fact, likely to adversely affect Atlantic sturgeon or its habitat, the agency will initiate formal consultation with NMFS. It is also important to remember that MARAD is not the final decisionmaker regarding whether the FY 2018 grant is likely to adversely affect Atlantic sturgeon or its critical habitat. *See* 50 C.F.R. § 402.13(c), (c)(2). NMFS, the experts on Atlantic sturgeon and its critical habitat, has the ultimate authority to make that determination. *See id.* MARAD will engage in formal consultation if NMFS does not concur with any final determination by MARAD that the FY 2018 grant is not likely to adversely affect Atlantic sturgeon or its habitat, as the ESA requires.[4]

### B. The Court's Order Does Not, and Cannot, Require Formal Consultation

Plaintiff's argument during the status conference that informal consultation is contrary to the Court's opinion also fails. In its opinion, the Court held that to the extent MARAD concluded that the FY 2018 grant would have "no effect" on the Atlantic sturgeon, such a conclusion ran counter to the evidence before the agency. Mem. Op., ECF 52 at 27 (citing *Sierra Club, Inc. v. U.S. Forest Serv.*, 897 F.3d 582, 590 (4th Cir. 2018)). The Court reasoned, based on evidence not contained in the administrative record, that the FY 2018 grant may affect Atlantic sturgeon. *Id.* at 26-27. Therefore, the Court concluded that Section 7 consultation obligations had been triggered and it "will order MARAD to engage in Section 7 consultation on the FY 2018 grant to determine

---

[4] If Plaintiff disagrees with conclusions reached, or data and methods used, in the upcoming ESA consultation, it may file a new lawsuit.

whether it is 'likely to jeopardize the continued existence' of Atlantic sturgeon populations in the James River." *Id.* at 27 (quoting 16 U.S.C. § 1536(a)(2)).

Contrary to Plaintiff's statements at the status conference, nowhere in the Court's opinion did it conclude that the FY 2018 grant is likely to adversely affect Atlantic sturgeon or its critical habitat—a determination that requires the agency to engage in formal consultation as Plaintiff would prefer. *See* 50 C.F.R. § 402.14(a)-(b)(1). Instead, the Court ordered MARAD to engage in Section 7 consultation to determine whether it is likely to jeopardize the continued existence of Atlantic sturgeon. Mem. Op., ECF 52 at 27. As discussed above, the ESA and its implementing regulations are clear that MARAD can comply with that order by *either* conducting informal consultation (provided that both MARAD and NMFS agree that the FY 2018 grant is not likely to adversely affect the sturgeon or its critical habitat) or formal consultation. *See supra* at 3-4.

Nor can the Court hold that MARAD is required to engage in formal consultation. Such a holding would require the Court to determine that the FY 2018 grant is likely to adversely affect Atlantic sturgeon or its critical habitat—a determination that has no evidentiary or legal basis in the current record.[5] It would also exceed the Court's authority. Both the ESA and its implementing regulations make clear that it is firmly the responsibility of the action agency to determine in the first instance whether its action is, or is not, likely to adversely affect listed species or critical habitat. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.13(a), (c). While the Court can order MARAD to

---

[5] The Court would need to make many fact-specific determinations in order to decide that the FY 2018 grant is likely to adversely affect Atlantic sturgeon or its critical habitat. For example, it would need to examine the effects of the FY 2018 grant, which are defined as "all consequences to listed species or critical habitat caused by the proposed action, including the consequences of other activities that are caused by the proposed action." 50 C.F.R. § 402.02; *id.* § 402.14(c)(1)(iv). The Court would also need to assess the purpose of the action, the duration and timing of the action, the specific components of the action, the cumulative effects of the action, etc. *Id.* § 402.14(c)(1)(iv). While MARAD is in a position to make these determinations and conduct this analysis, the Court is not.

engage in Section 7 consultation, it cannot dictate how the agency will engage in that consultation. *See Fed. Power Comm'n v. Transcontinental Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976) (upon remand, a reviewing court may not "proceed by dictating to the agency, the methods, procedures, and time dimension of the needed inquiry . . . Such a procedure clearly runs the risk of propelling the court into the domain which Congress has set aside exclusively for the administrative agency.") (internal citations and quotations omitted); *Hyatt v. U.S. Patent and Trademark Off.*, 110 F. Supp. 3d 644, 653 (E.D. Va. 2015) ("Where an action is discrete and legally required, excessive entanglement [by courts] is avoided not by declining jurisdiction, but by shaping a remedy—in the event one is warranted—that addresses an agency's obligation to act but leaving 'the manner of its action' to the agency's discretion . . . In other words, there would be jurisdiction over a claim to compel the agency action but not to dictate the manner of that agency action.") (quoting *Norton v. S. Utah Wilderness Alliance*, 542. U.S. 55, 65 (2004)). The Court may not substitute its judgment for that of MARAD on matters within the agency's purview, even when it finds legal errors with agency decisions. *See Norton*, 542 U.S. at 66-67 (otherwise, "it would ultimately become the task of the supervising court, rather than the affected agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management").

In short, the Court may neither direct the substance of MARAD's determination (whether the FY 2018 grant is likely to adversely affect Atlantic sturgeon or its habitat) nor supervise the step-by-step actions taken by an agency to comply with the Court's order or the ESA (whether to engage in informal or formal consultation).

### III. Conclusion

The Court should adopt the parties joint proposed schedule as an enforceable order of this Court.

Dated: May 16, 2023

Respectfully submitted,

PETE BUTTIGIEG,
Secretary of Transportation,

ANN C. PHILLIPS,
Administrator of Maritime Administration,

MARITIME ADMINISTRATION,

JESSICA D. ABER,
United States Attorney

/s/_____
Garry D. Hartlieb, IL Bar No. 6322571
Assistant United States Attorney
Office of the United States Attorney
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Telephone: (757) 441-6331
Facsimile: (757) 441-6689
E-mail: garry.hartlieb@usdoj.gov

TODD KIM,
Assistant Attorney General

S. JAY GOVINDAN,
Section Chief

MEREDITH L. FLAX,
Assistant Section Chief
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section

/s/_____
Kaitlyn Poirier, TN Bar No. 034394
(admitted pro hac vice)
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 598-1050
Facsimile: (202) 305-0275
E-mail: kaitlyn.poirier@usdoj.gov

Counsel for Defendants