IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

CENTER FOR BIOLOGICAL
DIVERSITY,

    Plaintiff,

        v.                                    Civil Case No. 4:21cv132

U.S. MARITIME ADMINISTRATION,
PETE BUTTIGIEG, in his official
capacity, and ANN C. PHILLIPS, in her
official capacity,

    Defendants.

## ORDER

This matter comes before the Court following the Court's Memorandum Opinion and Order denying in part and granting in part Plaintiff and Defendants' cross-motions for summary judgment. In the Memorandum Opinion, the Court found that the United States Department of Transportation Maritime Administration ("MARAD") violated Section 7 of the Endangered Species Act ("ESA") for failure to consult on the FY 2018 James River Project grant. Mem. Op. at 27, ECF No. 52. The Court directed the parties to propose a schedule for Section 7 consultation. Order, ECF No. 53. Following a disagreement regarding the scope of the injunction, the Court ordered the parties to submit supplemental briefing.

For the reasons stated below, the Court ORDERS MARAD, within 120 days, to initiate consultation on the FY 2018 James River Project grant pursuant to Section 7 of the Endangered Species Act. Defendants SHALL provide the Court with periodic status reports. The first status report shall be submitted three (3) days after the agency initiates consultation, with subsequent

status reports to be provided every sixty (60) days thereafter, until terminated upon further order of the Court.

## I. BACKGROUND

In its Memorandum Opinion, the Court found MARAD in violation of the Endangered Species Act for failure to conduct a Section 7 consultation on the FY 2018 James River Project grant issued under the U.S. Marine Highway Program. Mem. Op. at 27. Although MARAD argued that it was not required to conduct a consultation because it had determined that the grant had "no effect" on listed species or critical habitat, the Court concluded that evidence in the record failed to establish that the agency made this finding. *Id.* at 25–26. Moreover, the Court found that even if MARAD had determined that the FY 2018 James River Project grant had 'no effect' on James River Atlantic sturgeon, the decision was arbitrary and capricious given the evidence before the agency. *Id.* at 27. As such, the Court stated it would "order MARAD to engage in Section 7 consultation on the FY 2018 grant to determine whether the grant is 'likely to jeopardize the continued existence' of Atlantic sturgeon populations in the James River." *Id.*

Following entry of its Memorandum Opinion, the Court ordered the parties to meet and confer and submit a proposed schedule for consultation. Order, ECF No. 53. Thereafter, Defendants filed a notice (signed by Plaintiff) stating that MARAD intended to comply with the Court's order by requesting informal ESA consultation with the National Marine Fisheries Service ("NMFS"). Notice, ECF No. 54. The notice stated that Defendants would submit a written request for NMFS to concur with MARAD's determination that the issuance of the FY 2018 James River Project grant was "not likely to adversely affect" the Atlantic sturgeon by August 14, 2023. *Id.* at 1. Defendants explained that "[i]n the event NMFS informs MARAD that the FY 2018 grant is likely to adversely affect Atlantic Sturgeon, MARAD [would] submit a status report" and

subsequently "propose a schedule for MARAD to request initiation of formal consultation." *Id.* at 2.

During a subsequent status conference, the Court became aware that Plaintiff objected to the manner in which Defendants stated they would comply with the Court's order. ECF No. 55. The Court directed the parties to provide supplemental briefing on the issue. *See* Defs.' Opening Br. Regarding Remedy ("Defs.' Br."), ECF No. 56; Pl.'s Resp. Mem. Regarding Remedy ("Pl.'s Br."), ECF No. 57; Defs.' Reply Br. Regarding Remedy ("Defs.' Reply"), ECF No. 58. The matter is now ripe for disposition.

## II. STANDARD OF REVIEW

Plaintiff brought this action under the Endangered Species Act's citizen suit provision. 16 U.S.C. § 1540(g). This provision authorizes a person to commence a civil suit "to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision" of the ESA or regulation issued pursuant to the ESA. *Id.* § 1540(g)(1)(A). It also provides district courts with jurisdiction "to enforce any such provision or regulation [under the ESA], or to order the Secretary to perform such act or duty, as the case may be." *Id.* § 1540(g)(1). More generally, it is well recognized that federal courts have broad discretion to fashion equitable relief to remedy an established wrong. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## III. ANALYSIS

Section 7 of the Endangered Species Act imposes a consultation requirement on Federal agencies. It provides that:

> Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency (hereinafter in this section referred to as an "agency action") is not likely to jeopardize the continued existence of any endangered species or threatened species

> or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary, after consultation as appropriate with affected States, to be critical . . . .

16 U.S.C. § 1536(a)(2).

The United States Fish and Wildlife Service and the National Marine Fisheries Service (together, the "Services") promulgated rules implementing the consultation requirement. Under these regulations, if an agency determines that an action "may affect listed species or critical habitat" it must commence formal consultation unless an exception applies. 50 C.F.R. § 402.14(a). One exception is if the agency determines that "the proposed action is not likely to adversely affect any listed species or critical habitat," either via "informal consultation" with the respective Service agency or through preparation of a biological assessment (the "exception"). *Id.* § 402.14(b)(1). In either case, a written concurrence of the "not likely to adversely affect" determination by the Director of the consulting Service agency is required. *Id.*

Defendants have stated that, in lieu of formal consultation, they intend to use the exception. Specifically, MARAD intends to engage in informal consultation with NMFS and obtain a letter from NMFS concurring with MARAD's determination that the FY 2018 grant is "not likely to adversely affect" the Atlantic sturgeon in the James River. Notice, ECF No. 54.[1] Plaintiff raises two objections. First, Plaintiff contends that given the factual record, the agency should be required to engage in formal consultation. Second, Plaintiff contends that if the Court allows MARAD to proceed with informal consultation, it should require the agency to conduct a biological assessment as part of this process. Plaintiff also asks the Court to retain jurisdiction of this matter. The Court will address each argument in turn.

---

[1] MARAD also indicates in its Notice that if NMFS does not concur with MARAD's "not likely to adversely affect" determination, it will engage in formal consultation.

4

### A. Formal Consultation

Plaintiff argues that the Court should order MARAD to engage in formal consultation because "based on available facts . . . MARAD cannot possibly make a valid 'not likely to adversely affect' determination," which is necessary to engage in informal consultation. Pl.'s Br. at 5; *see generally* 50 C.F.R. § 402.14(b)(1). Defendants argue that by requiring MARAD to engage in formal consultation, the Court would be effectively making the opposite finding—that the FY 2018 grant is likely to adversely affect the James River Atlantic sturgeon. Defendants suggest that this is improper both because the regulation states that "the Federal agency" should make that determination in the first instance, and because the factual record before the Court does not support a finding that the FY 2018 grant is likely to adversely affect the Atlantic sturgeon. Defs.' Reply at 1–3.

The Court agrees that by asking the Court to order formal consultation, Plaintiff is effectively requesting that the Court determine the FY 2018 grant is "likely to adversely affect" the Atlantic sturgeon in the James River. Regardless of whether the evidence would support such a finding, the regulations are clear that the determination is to be made in the first instance by the "the Federal agency," which in this case is MARAD. *See* 50 C.F.R. § 402.14(b)(1). Therefore, the Court declines to specifically order MARAD to engage in formal consultation.

### B. Biological Assessment

Plaintiff alternatively argues that if MARAD pursues informal consultation, the Court should require it to also conduct a biological assessment. Despite the language of the regulatory exception permitting the determination to be made through either "the preparation of a biological assessment" or through "informal consultation with the Service," Plaintiff contends that the ESA

(from which this regulation is derived) requires MARAD to conduct a biological assessment. Pl's Br. at 12–15; *see generally* 50 C.F.R. § 402.14(b).

As previously discussed, Section 7 of the Endangered Species Act, codified at 16 U.S.C. § 1536(a)(2), requires each federal agency to consult with the Services to ensure that its actions are "not likely to jeopardize the continued existence of endangered species" such as the James River Atlantic sturgeon. Additionally, the ESA provides that:

> To facilitate compliance with the requirements of subsection (a)(2), each Federal agency shall, with respect to any agency action of such agency for which no contract for construction has been entered into and for which no construction has begun on November 10, 1978, request of the Secretary information whether any species which is listed or proposed to be listed may be present in the area of such proposed action. If the Secretary advises, based on the best scientific and commercial data available, that such species may be present, such agency shall conduct a biological assessment for the purpose of identifying any endangered species or threatened species which is likely to be affected by such action.

16 U.S.C. § 1536(c)(1).

Plaintiff argues that MARAD must conduct a biological assessment pursuant to subsection (c)(1) because it requires an agency to conduct a biological assessment if a listed species "may be present" in an area where an agency action is proposed. Pl.'s Br. at 13. Defendants argue, among other things, that this provision only applies to "major construction activities," and that the FY 2018 James River grant is not such an activity. Defs.' Reply at 10–11.[2]

The Court need not wade into this dispute. Under either interpretation, the purpose of the biological assessment is "to facilitate compliance with" Section 7 consultation. MARAD is only now being ordered to engage in Section 7 consultation. Plaintiff's request that the Court require

---

[2] There is a split of authority on this question. *Compare Water Keeper All. v. U.S. Dep't of Def.*, 271 F.3d 21, 26 (1st Cir. 2001) (biological assessment only required for a "major construction activity"), *with Sierra Club v. U.S. Army Corps of Eng'rs*, 295 F.3d 1209, 1213 (11th Cir. 2002) (biological assessment required for all actions where there may be an endangered or threatened species present).

MARAD to conduct a biological assessment is, in substance, a preemptive challenge to MARAD's future actions. While the Court recognizes that it has broad discretion to fashion an appropriate equitable remedy, *see, e.g.*, *Weinberger*, 456 U.S. at 320, it declines to prejudge the manner in which MARAD may comply with its consultation requirements.[3]

### C. Retention of Jurisdiction

Finally, Plaintiff asks the Court to retain jurisdiction over this case. Pl.'s Br. at 15. Courts have discretion to retain jurisdiction to ensure compliance with a court order. *United States v. Metro. Dist. Comm'n*, 930 F.2d 132, 135 (1st Cir. 1991); *see also Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 839 F. Supp. 2d 1117, 1131 (D. Or. 2011); *Ctr. for Biological Diversity v. Marina Point Dev. Assocs.*, 434 F. Supp. 2d 789, 800 (C.D. Cal. 2006). Here, given that Defendants have outlined a multi-stage process to comply with the consultation order, the Court finds it appropriate to retain jurisdiction. Nevertheless, this order remains final and appealable. *See, e.g.*, *Tyler v. City of Manhattan*, 118 F.3d 1400, 1402 n.1 (10th Cir. 1997) ("The fact that the district court may retain jurisdiction over the parties to enforce its judgment does not convert the judgment to an interlocutory order for purposes of appeal.").

### IV. CONCLUSION

For the reasons stated above, the Court ORDERS MARAD, within 120 days, to initiate consultation on the FY 2018 James River Project grant pursuant to Section 7 of the Endangered Species Act. Defendants SHALL provide the Court with periodic status reports. The first status report shall be submitted three (3) days after the agency initiates consultation, with subsequent

---

[3] For the same reasons, Plaintiff's additional arguments against MARAD's proposed course of action fail. *See* Pl.'s Br. at 11–12.

status reports to be provided every sixty (60) days thereafter, until terminated upon further order of the Court.

The Clerk is directed to provide a copy of this Order to all counsel of record.

It is SO ORDERED.

/s/
Elizabeth W. Hanes
United States District Judge

Newport News, Virginia
Date: August 4, 2023